UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DANIEL HERNANDEZ,<br><br>            Plaintiff,<br>v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>            Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 06cv0232-WQH (BLM)<br><br>**REPORT AND RECOMMENDATION FOR ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Doc. No. 23], GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT [Doc. No. 29-1, 29-2] AND DENYING DEFENDANT'S MOTION TO DISMISS AS MOOT [Doc. No. 29-4]** |

Daniel Hernandez brought this action to obtain judicial review of the Social Security Commissioner's final decision partially denying his claim for disability insurance benefits under Title II of the Social Security Act. See 42 U.S.C. §§ 401-33. Before the Court are Plaintiff's motion for summary judgment, Defendant's[1] cross-motion for

---

[1]      On February 12, 2007, Michael J. Astrue replaced Jo Anne B. Barnhart as the Commissioner of Social Security. Def.'s Cross-Mot. at 1 n.1. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, the Court therefore substitutes Michael J. Astrue as the Defendant in this case. Fed. R. Civ. P. 25(d)(1); see also 42 U.S.C. § 405(g).

summary judgment and opposition to Plaintiff's motion[2], and Plaintiff's opposition to Defendant's cross-motion.

The motions were referred to Magistrate Judge Major for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(2) and Rule 72(b) of the Federal Rules of Civil Procedure. This Court found the motions appropriate for submission on the papers and without oral argument pursuant to Local Rule 7.1(d)(1). Doc. No. 19. For the reasons set forth herein, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED** and Defendant's cross-motion for summary judgment be **GRANTED**.

<u>**PROCEDURAL BACKGROUND**</u>

On May 20, 2003, Plaintiff filed an application for disability insurance benefits, alleging disability due to plantar fasciitis, a torn anterior cruciate ligament, a torn meniscus, arthritis, and severe leg and foot pain. Administrative Record (hereinafter "AR") at 52-59. On October 28, 2004, Administrative Law Judge ("ALJ") Bernard A. Trembly issued a partially favorable decision for Plaintiff, finding that Plaintiff was under a disability, as defined in the Social Security Act, from June 23, 2002 through July 30, 2003, but not thereafter. AR at 21-27.

Plaintiff then filed a request for the Appeals Council to review the ALJ's decision. AR at 16-17. On June 29, 2005, the Appeals Council

---

[2]     Defendant also filed a memorandum of points and authorities in support of his motion to dismiss the complaint. However, Defendant did not file an accompanying notice. Moreover, the memorandum of points and authorities in support of his motion to dismiss the complaint is identical to the memorandum of points and authorities in support of his motion for summary judgment. As a result, the Court will consider Defendant's motion for summary judgment and **RECOMMENDS** that Defendant's motion to dismiss be **DENIED** as moot.

declined to grant review but notified Plaintiff that he could file a civil action within 60 days from the date of receipt of the notice. AR at 9-12. On November 9, 2005, Plaintiff requested an extension of time to file a civil action, claiming that he had been misinformed and had sent his paperwork to the wrong department. AR at 4. On December 16, 2005, the Appeals Council granted Plaintiff an additional 30 days from the date of receipt in which to file a civil action. AR at 3.

On January 9, 2006, Plaintiff attempted to fax a letter requesting "additional time" to file a civil action to "Branch 16" of the Social Security Administration's Office of Hearings and Appeals.[3] See Letter attached to Pl.'s Mot. for Summ. J. [Doc. No. 23]. The Appeals Council has no record of receiving Plaintiff's second request. See Decl. of Rose Ray, Office of Hearings and Appeals, Soc. Sec. Admin. ("Ray Decl.")[4] at 3.

Plaintiff filed his Complaint in this Court on January 31, 2006. Doc. No. 1. On April 10, 2006, Defendant moved to dismiss the Complaint as barred by the sixty-day statute of limitations set forth in 42 U.S.C. § 405(g). Doc. No. 6. On June 20, 2006, this Court issued a Report and Recommendation, wherein the Court recommended that the motion to dismiss be denied. Doc. No. 11. Specifically, the Court found that Plaintiff's complaint was untimely but concluded that the motion to dismiss was premature because Plaintiff should be afforded the opportunity to provide evidence establishing grounds for equitable tolling. Id.

---

[3]   The transmission report attached to Plaintiff's motion shows that the document was not successfully transmitted until January 10, 2006. See Letter attached to Pl.'s Mot. for Summ. J. [Doc. No. 23].

[4]   This declaration is referenced in Def.'s Cross-Motion but is attached to Defendant's April 10, 2006 Motion to Dismiss [Doc. No. 6].

06cv0232-WQH (BLM)

Neither party filed objections to the Report and Recommendation and on August 24, 2007, the District Judge adopted this Court's Report and Recommendation in its entirety.  Doc. No. 12.  In the same order, the District Judge ordered Defendant to file an answer within thirty days. Id.

On September 7, 2007, Defendant answered the Complaint and lodged the administrative record.  Doc. No. 13.  Pursuant to a scheduling order issued by this Court, Plaintiff, who is proceeding *pro se*, filed a Motion for Summary Judgment ("Pl.'s SJ Mot.") on January 12, 2007.  Doc. No. 23.  Defendant opposed the motion on February 20, 2007, and also filed a Cross-Motion for Summary Judgment and a Motion to Dismiss on the same day[5].  Doc. Nos. 29-1, 29-2, 29-3, 29-4.  On March 2, 2007, Plaintiff filed an Opposition to the Cross-Motion.  Doc. No. 32.

## FACTUAL BACKGROUND

**A.   Plaintiff's Educational and Employment History**

Born on April 18, 1958, Plaintiff was forty-six years old at the time of the ALJ's decision.  Def.'s Cross-Mot. at 1; AR at 52, 211. Plaintiff has a high school education and has completed one year of collegiate study.  AR at 65.  Prior to the onset of his disability, Plaintiff worked as a correctional officer.  AR at 65, 212.

**B.   Plaintiff's Medical History**

**1.   Records from June 23, 2002 Until July 30, 2003**

Because it is undisputed that the ALJ ultimately awarded disability benefits for the period from June 23, 2002 until July 30, 2003, and

---

[5]     The memoranda accompanying these three pleadings are identical.  For purposes of consistency, the Court will cite only to the memorandum accompanying Defendant's Cross-Motion ("Def.'s Cross-Mot.").

because Plaintiff only disputes the ALJ's conclusion that Plaintiff medically improved after July 30, 2003, this Court addresses Plaintiff's pre-July 30, 2003 medical records only briefly.

Throughout the record, Plaintiff complains that he suffers persistent foot, leg, and back pain due to plantar fasciitis, a torn anterior cruciate ligament ("ACL"), a torn meniscus, and arthritis. On or around December 26, 2002, Plaintiff underwent surgery to repair the torn ACL in his left knee. AR at 126, 214. On April 7, 2003, Plaintiff elected surgical treatment and underwent a partial plantar fasciotomy on his right foot. AR at 111-12. Overall, the administrative record reflects that, although Plaintiff sought ongoing care from several physicians at Kaiser Permanente, his primary treating physicians were Daniel McDermott, D.P.M., Patricia Tsung, M.D., William Luetzow, M.D., and Bradley Williams, M.D. None of these physicians explicitly opined during this time frame that Plaintiff was disabled.

Shortly after Plaintiff applied for disability benefits, George Spellman, M.D., a board certified internist, reviewed Plaintiff's records and provided a consultative opinion. AR at 154-63. On June 20, 2003, Dr. Spellman opined that Plaintiff could stand and/or walk for about six hours in an eight hour workday, sit for about six hours in an eight hour workday, lift fifty pounds occasionally and twenty-five pounds frequently, and engage in any postural activities except for ladder climbing. Id.

**2.   Records After July 30, 2003**

On August 28, 2003, Stephen Swan, M.D., provided a consultative opinion after reviewing Plaintiff's records. AR at 164-73. Dr. Swan opined that Plaintiff could stand and/or walk for at least two hours in an eight hour workday, sit for about six hours in an eight hour workday,

5

1   lift twenty pounds occasionally and ten pounds frequently, and use foot

2   controls, but only occasionally.  Id.  Additionally, he added that

3   Plaintiff should be restricted to occasional postural activities.  Id.

4       Plaintiff also provided the ALJ with records from Kaiser Permanente

5   reflecting treatment he received between September 2003 and June 2004.

6   AR at 175-99.  These records, which will be discussed more thoroughly in

7   the Discussion section of this order, pertain to Plaintiff's ongoing

8   issues with knee pain and plantar fasciitis, as well as his reports of

9   lower back pain.  Id.

10      After the ALJ rendered his decision, Plaintiff appealed to the

11  Appeals Council.  In a letter dated April 29, 2005, Plaintiff asked the

12  Appeals Council to consider additional evidence.  AR at 203-04.  This

13  evidence consisted of (1) an opinion from Dr. Luetzow dated April 11,

14  2005, (2) an opinion from Dr. Ronald Kerr dated March 8, 2005, (3) an

15  opinion from Dr. McDermott dated February 24, 2005, (4) an opinion from

16  Dr. Tsung dated December 30, 2004, (5) a letter from Dr. Dana Maciunas

17  dated March 2, 1973, and (6) a Department of Motor Vehicles ("DMV")

18  certification of disability form completed by Dr. Luetzow (related to

19  obtaining a disabled placard for Plaintiff's car).  AR at 204-07.

20  **C.  June 22, 2005 Hearing Testimony**

21      Plaintiff, Plaintiff's wife Virginia, and a vocational expert

22  ("VE") testified at the hearing.  AR at 208.  Plaintiff was not

23  represented by counsel and waived his right to additional time to retain

24  an attorney.  AR at 210.

25      The ALJ began by confirming that Plaintiff had undergone surgery

26  for his left knee as well as his right foot.  AR at 214-15.  Plaintiff

27  testified that his knee had deteriorated since the surgery, that it was

28  very unstable, and that he was in a lot of pain.  AR at 214.  He

explained that he wore a brace all the time because his knee had a tendency to buckle. AR at 214-15. As for his feet, Plaintiff testified that he had problems with both feet, but did not have surgery on the left one since the surgery on his right foot was unsuccessful. AR at 215. His doctor prescribed him a cane, which he used to prevent himself from veering off to the side. AR at 216. Otherwise, Plaintiff testified that he understood his foot problems to be chronic and that his doctor had not provided any other treatment options. AR at 216-17.

When the ALJ started discussing alternate jobs Plaintiff might be able to perform[6], Plaintiff testified that he could only sit for "a certain amount of time." AR at 220. He said he had a lower back problem that had worsened with his leg problems, though he acknowledged that he likely had aggravated the back problem by using improper posture in an effort to compensate for the foot pain. Id. Plaintiff also mentioned experiencing pain in his hip. Id.

As for day to day activities, Plaintiff said he could drive for short periods of time, but had trouble sleeping and did not really engage in any physical activities during the day. AR at 220-22. He testified that he generally took Vicodin for the pain and ibuprofen for the swelling, though he also had taken a few other medications in the past. AR at 222-23.

**D.   The ALJ's Decision**

The ALJ issued his decision on October 28, 2004. AR at 21-27. He concluded that Plaintiff was disabled from June 23, 2002 to July 30, 2003, but not thereafter. Id. The ALJ set forth the following

---

[6]      During this time, the VE testified very briefly that the job of correctional officer is categorized as semi-skilled, medium work. AR at 218.

1   explanation for his decision:

2       The undersigned has carefully considered the claimant's
3   allegations of the nature, severity and functionally limiting
    effects of his impairments and symptoms pursuant to the law of
4   the Ninth Circuit Court of Appeals, SSRs 96-3p, 96-4p, 96-7p,
    and pertinent regulations, and rejects those allegations
5   regarding the time period commencing on July 30, 2003, for the
    following clear and convincing reasons.  First, the claimant
6   has undergone minimal conservative treatment during the period
    after July 2003.  Second, in fact, there are significant gaps
7   in the treatment record during the period after July 30, 2003.
    Third, moreover, clinical presentation after July 2003
8   indicates that the claimant's condition is generally stable
    and maintained on his medication and conservative regimen.
9   Fourth, moreover, the claimant's physicians have noted that
    the claimant's symptoms exceed objective clinical signs or
10  findings which could explain them.  Fifth, regardless, no
    physician of record has opined that the claimant's continued
11  symptoms or impairments result in greater limitations than
    found by the undersigned after July 30, 2003.  Sixth, in fact,
12  the State Agency program physicians have found the claimant
    capable of performing sedentary to light work, and the
13  claimant's treating physicians imposed no lifting limitations
    after July 2003, nor any restrictions in the capacity for full
14  time work after July 2003.  Seventh, the claimant's daily
    activities are consistent with the residual functional
15  capacity for sedentary work after July 2003, with the claimant
    himself reporting that he engages in a sedentary lifestyle as
16  compared with his pre-injury status.

17      From June 23, 2002, until July 30, 2003, the claimant's
    residual functional capacity was restricted to the point that
18  he was unable to perform a significant range of even sedentary
    work in the competitive workplace on a regular and continuing
19  basis.  As of July 30, 2003, the claimant's condition
    medically improved to the point that he retained the residual
20  functional capacity for the performance of sedentary work in
    the competitive workplace on a regular and continuing basis,
21  the only additional limitation being a restriction to
    occasional postural activities.

22      Based upon the claimant's residual functional capacity at all
23  times, the claimant is unable to perform his past relevant
    work as a residential technician or correctional officer.  The
24  claimant's work activities in those positions were at the
    medium level of exertion.

25      Based upon the claimant's residual functional capacity, age,
26  education and past relevant work experience, from June 23,
    2002 until July 30, 2003, the claimant was unable to perform
27  any jobs which exist in significant numbers in the national
    economy (20 CFR, Part 404, Subpart P, Appendix 2, Section
28  201.00(h)(3); SSRs 96-8p, 96-9p).  As of July 30, 2003,
    considering the claimant's residual functional capacity and

1         vocational profile, the claimant is able to perform other jobs
2         which exist in significant numbers in the national economy.
        In fact, used as a framework for decision-making, based upon
3         the claimant's residual functional capacity, age, education
        and past relevant work experience, Medical-Vocational
4         Guideline Rule 201.21, Table No. 1, Appendix 2, Subpart P,
        Regulations No. 4, recommends a conclusion that the claimant
5         is "not disabled."

6 AR at 24-5.

7 **LEGAL STANDARD**

8     To qualify for disability benefits under the Social Security Act,

9 an applicant must show that: (1) he suffers from a medically

10 determinable impairment that can be expected to result in death or that

11 has lasted or can be expected to last for a continuous period of twelve

12 months or more; and (2) the impairment renders the applicant incapable

13 of performing the work that he previously performed or any other

14 substantially gainful employment that exists in the national economy.

15 42 U.S.C. § 423(d)(1)(A). An applicant must meet both requirements to

16 be considered "disabled." Id.

17     The Secretary of the SSA has established a five-step sequential

18 evaluation process for determining whether a person is disabled. 20

19 C.F.R. §§ 404.1520, 416.920. Step one determines whether the claimant

20 is engaged in "substantial gainful activity." If he is, disability

21 benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is

22 not, the decision maker proceeds to step two, which determines whether

23 the claimant has a medically severe impairment or combination of

24 impairments. 20 C.F.R. §§ 404.1520(c)), 416.920(c)).

25     Where the claimant does not have a severe impairment or combination

26 of impairments, the disability claim is denied. Where the impairment is

27 severe, the evaluation proceeds to the third step, which determines

28 whether the impairment is equivalent to one of a number of listed

9

impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404, Subpart P, Appendix 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he has performed in the past. A claimant who is able to perform his previous work is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot perform his previous work, the fifth and final step of the process determines whether he is able to perform other work in the national economy in view of his age, education, and work experience. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Section 405(g) of the Act allows unsuccessful applicants to seek judicial review of the Social Security Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is limited. Review must be sought within sixty days after the mailing of the final decision and the Commissioner's denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. Id.; Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).

Substantial evidence means "more than a mere scintilla but may be less than a preponderance." Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (citation omitted). It is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion." Id. (citation omitted); see also Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (finding

06cv0232-WQH (BLM)

substantial evidence in the record despite ALJ's failure to discuss every piece of evidence).   Where the evidence can reasonably be construed to support more than one rational interpretation, the court must uphold the ALJ's decision.   <u>Batson</u>, 359 F.3d at 1193.   This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts.   <u>See</u> <u>Lewis</u>, 236 F.3d at 509.

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision.   <u>See</u> <u>Batson</u>, 359 F.3d at 1193.   Section 405(g) permits a court to enter a judgment affirming, modifying, or reversing the Commissioner's decision.   42 U.S.C. § 405(g).   The reviewing court may also remand the matter to the SSA for further proceedings.   <u>Id.</u>

## DISCUSSION

Defendant again argues that Plaintiff's Complaint should be denied as time-barred and that no circumstances exist to justify equitable tolling of the time limit for Plaintiff's action.   Def.'s Cross-Mot. at 4-5.   Alternatively, Defendant argues that the ALJ's decision was based upon substantial evidence and should be affirmed.   <u>Id.</u> at 5-8.

Plaintiff responds that the circumstances of his case justify equitable tolling of the time period from the date his first extension request was granted until he filed the instant Complaint.   Pl.'s Opp'n at 3.   As to the merits of his Complaint, Plaintiff argues that the ALJ erred by limiting Plaintiff's receipt of disability benefits to the

period from June 23, 2002 through July 3, 2003[7], because the ALJ incorrectly concluded that Plaintiff's condition had medically improved after July 3, 2003. Pl.'s SJ Mot. at 1. Plaintiff adds that his condition has, in fact, deteriorated since the ALJ rendered his decision. Pl.'s Opp'n at 4-7.

**A. Plaintiff's Complaint was Filed Outside of the Time Period Provided by the Commissioner**

Defendant contends that Plaintiff's Complaint is untimely because it was not brought within the sixty-day time limit for filing a civil action after an adverse disability determination. Def.'s Cross-Mot. at 4-5. Section 205(g) of the Social Security Act provides:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). The sixty-day time limit is not jurisdictional, but rather it is a statute of limitations which the agency may waive. <u>Banta v. Sullivan</u>, 925 F.2d 343, 345 (9th Cir. 1991). The decision of whether to waive the sixty-day time limit is the Commissioner's alone. <u>Matlock v. Sullivan</u>, 908 F.2d 492, 494 (9th Cir. 1990); <u>see</u> <u>also</u> 20 C.F.R. § 416.1403(a)(8) (prohibiting judicial review of Commissioner's refusal to grant extension of time period for requesting review of decision).

The undisputed evidence in the record establishes that Plaintiff filed his Complaint after the time period provided by the Commissioner. On June 29, 2005, the Appeals Council mailed Plaintiff a notice that

---

[7]    Plaintiff repeatedly lists July 3, 2003 as the date his benefits expired, but the ALJ's decision provides for benefits until July 30, 2003. <u>See</u> AR at 21-7.

Plaintiff could commence a civil action within sixty days of the date on which he received the notice.  AR at 9-12; Ray Decl. at 3.  Plaintiff did not do so.  However, on November 9, 2005, Plaintiff requested an extension of time to file a civil action, claiming that he "was misinformed and submitted [his] paperwork to the wrong departments."  AR at 4.  On December 16, 2005, the Appeals Council granted Plaintiff's request and advised him that he had 30 days from the date of receipt of the letter to file his civil action.  AR at 3.  Plaintiff asserts that he received the extension notice on December 22, 2005.  Pl.'s Opp'n at 3.  Accepting this representation[8], Plaintiff was required to commence his civil action on or before January 23, 2006 (the thirtieth day fell on January 21, 2006 — a Saturday).  Plaintiff did not file his Complaint until January 31, 2006.  Thus, absent a showing that Plaintiff is entitled to equitable tolling, Plaintiff's Complaint is untimely.

**B.   Plaintiff is Not Entitled to Equitable Tolling**

Plaintiff argues that the circumstances of his case justify equitable tolling of the time period from the date his first extension request was granted until he filed the instant Complaint apparently on the grounds that he diligently attempted to obtain a lawyer and, when unsuccessful, contacted the Social Security Administration about another

---

[8]   A Social Security Administration regulation provides that "the date of receipt of notice . . . shall be presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary."  20 C.F.R. § 422.210(c).  In the instant case, Plaintiff submitted an uncontested pleading asserting that he did not receive the letter until December 22, 2005.  Pl.'s Opp'n at 3.  Construing Plaintiff's pleadings liberally, as is required with pro se litigants, this Court finds that Plaintiff has made the requisite reasonable showing that he did not receive the letter until December 22, 2005 and will use this date to calculate the timeliness of Plaintiff's filing.

extension and followed their instructions. Pl.'s Opp'n at 3. Specifically, Plaintiff contends that he contacted several legal agencies to obtain counsel and/or assistance in filing his complaint but was unsuccessful. Id. Plaintiff claims that he then called "Sue Quick" at the Social Security Administration, explained his "unfortunate circumstances," and was told to fax an explanation to "Branch 16." Id. Plaintiff further explains that he faxed a letter requesting "additional time" to file a civil action to "Branch 16" of the Social Security Administration's Office of Hearings and Appeals on January 9, 2006 (see Letter attached to Pl.'s Mot. for Summ. J. [Doc. No. 23]). Defendant refutes Plaintiff's factual allegations and offers a declaration affirming that the Appeals Council has no record of receiving Plaintiff's second request for additional time to file his civil action (see Ray Decl. at 4).

The Supreme Court has determined that the sixty day requirement of § 405(g) is subject to equitable tolling. Bowen v. City of New York, 476 U.S. 467, 480 (1986). However, equitable relief should only be extended "sparingly." Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 96 (1990). For instance, equitable tolling may be appropriate "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," but the principles of equitable tolling "do not extend to what is at best a garden variety claim of excusable neglect." Id.; see also Foss v. Nat'l Marine Fisheries Serv., 161 F.3d 584, 590-591 (9th Cir. 1998) (finding equitable tolling applicable only where a government employee's misleading statement rose to the level of "wrongful conduct" or where "extraordinary circumstances" beyond the

applicant's control prevented timely filing).

The justifications Plaintiff proffers for his delay fail to warrant equitable tolling. Plaintiff does not contend that he was induced or tricked into missing the deadline for filing a civil action. <u>Irwin</u>, 498 U.S. at 96; <u>Foss</u>, 161 F.3d at 590-591. To the contrary, Plaintiff's January 9, 2006 letter expressly demonstrates that he received the Appeals Council's December 16, 2005 letter and understood that the Appeals Council had extended his deadline by only thirty days. <u>See</u> Letter attached to Pl.'s SJ Mot. While Plaintiff claims he was directed by a woman from the Office of Hearings and Appeals to "fax Branch 16 with his explanation" (Pl.'s Opp'n at 3), this allegation does not establish that he was tricked or induced into missing the deadline. Even accepting Plaintiff's allegations as true, there is no evidence that the woman, or anyone else, told Plaintiff that he could ignore the filing deadline, that the deadline would be extended for him or made any other misleading statement indicating that Plaintiff could file his civil action after the stated deadline. In fact, at best, the woman's instruction merely gave Plaintiff erroneous advise to fax, rather than mail, his explanation to Branch 16. Given that Plaintiff previously had properly submitted a successful extension request (AR at 3-4), there is no reason to believe that the allegedly incorrect advice affected his ability to timely file his civil action. Moreover, the allegedly incorrect advice does not rise to the level of wrongful conduct, extraordinary circumstances, or improper inducement or trickery.

Plaintiff's actions also do not evince the level of diligence necessary to justify equitable tolling. First, Plaintiff did not file any sort of pleading in this Court on a timely basis, <u>Irwin</u>, 498 U.S. at 96, and any claim that he could not discover the procedure for doing so

is belied by the fact that he successfully filed his civil complaint approximately 8 days after the deadline.  Second, Plaintiff did not even attempt to submit his extension request until less than two weeks remained before his filing deadline.  Third, Plaintiff had been granted an initial continuance in December 2005 based upon his allegation that he "was misinformed and submitted [his] paperwork to the wrong departments." AR at 4.  Because the Appeals Council denied Plaintiff's request for review of the ALJ's decision on June 29, 2005, Plaintiff's initial extension provided him with approximately six months during which he could have sought counsel and filed his civil complaint.  The Court, therefore, concludes that Plaintiff's repeated delays are due to his own lack of care and, as such, his allegations amount to nothing more than "a garden variety claim of excusable neglect," which does not justify equitable tolling.  Irwin, 498 U.S. at 96.

    With the filing of the administrative record and the opportunity for additional briefing, the Court finds that Plaintiff has been afforded ample opportunity to delineate a factual basis for equitable tolling.  See Vernon v. Heckler, 811 F.2d 1274, 1278 (9th Cir. 1987).  Because the Court concludes that Plaintiff has failed to establish that he is entitled to equitable relief, the Court **RECOMMENDS** that Defendant's cross-motion for summary judgment be **GRANTED** on the basis that the instant civil action was not timely filed.

**C.   The ALJ's Decision is Supported by Substantial Evidence**

    Even if Plaintiff had initiated the instant action in a timely manner, he would not be entitled to relief.  Plaintiff argues that the ALJ improperly limited his receipt of disability benefits to the period from June 2002 through July 2003 based on the erroneous assumption that Plaintiff's condition had improved (as evidenced by a lapse in doctor

16

visits after July 3, 2003).  Pl.'s SJ Mot. at 1.  In response to the ALJ's "assumption", Plaintiff explains that he did not cease visiting physicians for that period because his condition had improved but because his doctors had concluded that no other available medical treatments would improve Plaintiff's chronic conditions.  Id. at 1-2. Plaintiff also contends that his medical records dating back to March 2, 1973, support his claim that he has an ongoing lower back problem.  Id. at 4.  As further evidence of his ongoing disability claims, Plaintiff submits recent medical opinions to demonstrate that his medical problems have in fact worsened since the ALJ rendered his decision on October 28, 2004.  Id. at 2-5 (and attached documentation); Pl.'s Opp'n at 4-9 (and attached documentation).

Defendant responds that the overall record, including the evaluations by Plaintiff's own physicians, supports the ALJ's finding that after July 2003, Plaintiff retained a residual functional capacity for sedentary work with a limitation to occasional postural activities. Def.'s Cross-Mot. at 6.  Moreover, Defendant highlights the fact that the ALJ gave Plaintiff the benefit of the doubt rather than adopting the less favorable evaluations of the state agency physicians.  Id.  To the extent Plaintiff asks this Court to consider new evidence, Defendant submits that Plaintiff has not met the requisite standard such that this Court would be required to remand for consideration of the new evidence. Id. at 7 n.4.

1.   **The ALJ's Limitation of Benefits to a Specific Time Frame**

a.   **Record before the ALJ**

Plaintiff disputes the ALJ's conclusion that Plaintiff was no longer disabled as of July 2003.  Pl.'s SJ Mot. at 1.  While the ALJ offered several reasons for his disability conclusion, Plaintiff

17

challenges only "the assumption that plaintiff's condition had improved since there was a lapse in medical visits." <u>Id.</u> He urges that the lapse was not due to any medical improvement but instead attributable to his doctors' conclusion that no other viable treatment options remained available. <u>Id.</u> at 1-2. In response, Defendant argues that substantial evidence in the record supports the ALJ's decision. Def.'s Cross-Mot. at 6-7.

As set forth previously, a reviewing court may not disturb a decision by the Commissioner that is supported by substantial evidence. <u>Batson</u>, 359 F.3d at 1193. In reviewing the record, the Court is directed to defer to the ALJ's credibility determinations and resolutions of evidentiary conflicts. <u>See</u> <u>Lewis</u>, 236 F.3d at 509. Where the evidence reasonably can be construed to support more than one rational interpretation, the court must uphold the ALJ's decision. <u>Batson</u>, 359 F.3d at 1193.

The finding Plaintiff challenges is, in fact, one of the ALJ's seven grounds for rejecting Plaintiff's allegations of the "nature, severity and functionally limiting effects of his impairments and symptoms." <u>See</u> AR at 24. More precisely, Plaintiff finds fault with the ALJ's second reason for denying relief — that "there are significant gaps in the treatment record during the period after July 30, 2003." <u>Id.</u> However, even if the Court accepts Plaintiff's explanation for why these gaps in treatment existed, Plaintiff's argument does not overcome the evidence in this case, which supports the ALJ's conclusion that after July 2003, Plaintiff had the residual functional capacity for sedentary work.

As previously noted, Plaintiff contends that he stopped seeing his physicians regularly because he was advised that nothing else could be

1  done to treat him medically and that he would have to learn to live
2  with, and adapt to, the chronic pain.   Pl.'s SJ Mot. at 2.   While
3  Plaintiff is correct that at least one physician, Dr. McDermott, noted
4  that he did not know what else he could do for Plaintiff (AR at 176,
5  182), nowhere in the records that were before the ALJ did any of
6  Plaintiff's physicians, including Dr. McDermott, conclude that Plaintiff
7  was permanently disabled.   Plaintiff's medical condition may well be
8  stable level, such that further treatment is not likely to significantly
9  improve his condition, but the record still contains substantial
10 evidence supporting the ALJ's conclusion that Plaintiff is able to work.

11      The ALJ's thorough and reasoned decision sets forth substantial
12 evidence from Plaintiff's own physicians, which supports his decision.
13 Because Plaintiff disputes only the ALJ's finding that Plaintiff's
14 disability ceased as of July 2003, this Court focuses on the evidence
15 that was before the ALJ, which pertains to the period of time around
16 July 2003.

17      Plaintiff's first basis for claiming an ongoing disability is the
18 pain and impairment caused by the damage to his left knee.   As such, the
19 Court considers whether the ALJ's conclusion that Plaintiff's knee
20 problems had improved by July 30, 2003, is supported by substantial
21 evidence.   Batson, 359 F.3d at 1193.   During a March 10, 2003, physical
22 therapy appointment, Plaintiff reported that he was riding his
23 stationary bike at home and that, while he was having good and bad days,
24 he was "overall improved."   AR at 117.   The physical therapist noted
25 slight infra patellar swelling, but also observed that Plaintiff's left
26 knee strength had improved, that riding the stationary bike was helpful,
27 and that Plaintiff's left knee was "doing better."   AR at 116-17; see
28 also 20 C.F.R. § 404.1513 (d) (allowing consideration of evidence from

therapists "to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work"). By July 14, 2003, though Plaintiff was still reporting some knee pain, Dr. Williams, one of Plaintiff's orthopedic surgeons, prescribed only a stabilization brace or an off-the-shelf ACL brace and weight loss. AR at 108. Moreover, Dr. Williams opined that Plaintiff could return to work on or after July 1, 2003, and that Plaintiff's only limitations would be that he could not climb (except any stairs encountered when arriving at or leaving from work), twist, or participate in sports and that he could only stand and/or walk for five minutes per hour for a maximum of eight hours in a work day. AR at 106. These clinical findings and opinions are in keeping with the ALJ's conclusion.

Plaintiff's second allegedly disabling condition is his plantar fasciitis. There is also substantial evidence in the record that Plaintiff's foot problems had improved. See Batson, 359 F.3d at 1193. On February 10, 2003, Plaintiff reported to his treating podiatrist, Dr. McDermott, that he suffered persistent pain in his right foot. AR at 121. Dr. McDermott diagnosed chronic plantar fasciitis and scheduled surgery to release Plaintiff's plantar fascia medial band. Id. This surgery was conducted on April 7, 2003. AR at 111-12. On June 3, 2003, Plaintiff still reported experiencing pain and problems with his right foot. AR at 109. During his July 23, 2003 follow-up appointment, his physician injected a mix of triamcinolone, marcaine, and lidocaine into Plaintiff's right foot, instructed him to wear an equalizer boot for one more week, and directing him to then gradually transition into normal footwear and start soaking his foot. AR at 107. On the same day, Dr. McDermott opined that Plaintiff could not bend, climb, squat, twist or participate in sports. AR at 105. However, the only other restriction

Dr. McDermott placed on Plaintiff was that he not stand or walk more than fifteen minutes per hour.  <u>Id.</u>  Dr. McDermott did not opine that Plaintiff was unable to work.  <u>Id.</u>

Looking well beyond July 2003 to late 2003 and early 2004, the Court notes that Plaintiff continued to seek medical attention for ongoing knee and foot pain, but that nothing in the record contradicts the ALJ's conclusion that Plaintiff could engage in sedentary work.  On October 30, 2003, Dr. Tsung diagnosed pes planus in Plaintiff's right foot and neuropathic-type pain in his lower extremities, but recommended only pain relief medication and custom orthotics to correct the pes planus.  AR 191.  Dr. Luetzow opined on November 19, 2003, that neuropathic pain was Plaintiff's predominate problem and recommended a new left knee brace.  AR at 188.  On March 16, 2004, Plaintiff told Dr. Tsung that he had continuous right foot pain while standing, putting pressure on his heel, and walking, but he denied feeling any pain while sitting.  AR at 178.

In other words, while there is no doubt that Plaintiff continued to experience left knee and right foot pain after July 2003, the records support the ALJ's finding that Plaintiff only received conservative care for these problems and retained the residual functional capacity for sedentary work.  The Social Security Administration defines Sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria met.

20 C.F.R. § 404.1567(a) (West 2007).  As set forth above, Plaintiff's own treating physicians only placed limitations on his ability to stand

or walk for extended periods of time but did not limit his ability to sit or lift items.  See AR at 105-06.  Plaintiff himself denied pain while sitting.  AR at 178.  While Plaintiff undoubtedly finds it frustrating that he is unable to ambulate nearly as well as he could before or return to his past relevant work as a correctional officer, Social Security regulations do not allow the Commissioner to adjudge an applicant disabled and award benefits if that applicant retains the ability to perform other work in the national economy.  See 20 C.F.R. §§ 404.1520(g), 416.920(g); Batson, 359 F.3d at 1194.

Accordingly, considering the entire record before the ALJ, the Court finds that the ALJ's decision was reasonable and based on substantial evidence.  See Batson, 359 F.3d at 1193; Lewis, 236 F.3d at 509.  The Court, therefore, recommends that Plaintiff's motion for summary judgment on this basis be **DENIED.**

### b.  Additional Evidence Before the Appeals Council

Plaintiff also submitted new evidence to the Appeals Council after the ALJ rendered his decision on October 28, 2004.  AR 12-17, 200-07. In this Circuit, the district court is directed to "consider on appeal both the ALJ's decision and the additional material submitted to the Appeals Council."  Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993).  This is the case even if the Appeals Council denied the claimant's request for review.  Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000).

The evidence Plaintiff provided to the Appeals Council consisted of (a) opinions from Doctors Luetzow, Kerr, McDermott and Tsung, (b) an old request for a mattress by Dr. Maciunas, and (c) Dr. Luetzow's certification of disability for purposes of obtaining a DMV placard for Plaintiff.  AR at 200-07.  Of these opinions, only Dr. Luetzow concluded

that Plaintiff was disabled.[9]  Specifically, on April 11, 2005, Dr. Luetzow wrote on a prescription form:

> Mr. Hernandez has reached a permanent & stationary disability status for bilateral knee pain.  He uses a cane full time and can barely ambulate in the clinic today.  He can stand & walk only a few minutes each hour.

AR at 202.  Dr. Kerr's March 8, 2005 opinion, also submitted on a prescription form, stated only "I support Mr. Hernandez (sic) claim for Medical Disability.  Please see Letters from Dr. Tsung, Dr. Luetzow & Dr. McDermott." AR at 202.  However, because only one of these three physicians — Dr. Luetzow — opined that Plaintiff had reached a disabled state, it is unclear whether Dr. Kerr concluded that Plaintiff was disabled.

Because none of this evidence was before the ALJ, the Court considers the Appeals Council's standard of review.  When new and material evidence is submitted for the first time on appeal, "[t]he Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b); Ramirez, 8 F.3d at 1452.  Review of the case is warranted

---

[9]   Because the other opinions submitted by Plaintiff do not conclude that he is disabled, they do not further his claim.  For instance, Dr. McDermott only noted that he has tried both conservative and surgical treatment and reiterated his prior conclusion that Plaintiff may have to live with his stated pain. AR at 203.  Dr. Tsung restated Plaintiff's medical history and allegations of ongoing pain and summed up her finding as being that (1) Plaintiff's lower back pain is related to his altered gait (which is secondary to his bilateral foot and knee pain) and (2) her examination that day did not reveal definite nerve type symptoms explaining his lower back or hip pain. AR at 204.  On the DMV form, Dr. Luetzow found Plaintiff disabled as this term is defined by California Vehicle Code 295.5, not Social Security Regulations. AR at 207. Dr. Maciunas' opinion will be addressed *supra.*

only if the Appeals Council finds "that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record."  20 C.F.R. § 404.970(b).  Here, the Appeals Council notified Plaintiff that it had received his new evidence and was making it part of the record.  AR at 12.  Subsequently, the Appeals Counsel informed Plaintiff that it had considered the reasons he disagreed with the ALJ's decision and the additional evidence submitted, but had concluded that this information did not provide a basis for changing the ALJ's decision.  AR at 9-10.  For this reason, the Appeals Council denied Plaintiff's request for review.  AR at 9.

It is with this standard in mind that the Court evaluates the new evidence of disability.  Turning first to Dr. Luetzow's opinion, his assessment that Plaintiff can stand and walk for only a few minutes each hour is consistent with Dr. Williams' conclusion nearly two years earlier.  See AR at 106.  Dr. Williams did not opine at that time that Plaintiff was disabled and/or could not perform sedentary work and Dr. Luetzow's "prescription" offers no explanation for why the same limitations now justify a disability finding.  See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (a treating physician's conclusory or unsupported medical findings need not be automatically accepted as true in the face of contradictory clinical opinions).  Nor does Dr. Luetzow cite to any additional examination findings or other medical evidence supporting his conclusion that Plaintiff's condition had deteriorated.[10]  In addition, Dr. Luetzow does not make any statements or findings regarding Plaintiff's ability to sit or otherwise perform

---

[10]    Dr. Luetzow also does not provide any medical explanation for why Plaintiff's knee pain is now "bilateral." Prior medical records, including those from Dr. Luetzow, referenced only left knee pain.

1   sedentary work.

2       Similarly, there is no evidence in the record demonstrating that
3   Dr. Kerr ever examined or treated Plaintiff during the months or years
4   directly preceding his March 8, 2005 opinion.  Without any explanation
5   as to how Dr. Kerr reached his conclusion or even what his ultimate
6   conclusion was (given the disparate opinions with which he purports to
7   agree), Dr. Kerr's opinion is of little evidentiary value.  <u>See</u>
8   <u>Tonapetyan</u>, 242 F.3d at 1149.  As such, this Court finds that the
9   Appeals Council properly concluded that Dr. Kerr's opinion, like Dr.
10  Luetzow's opinion, did not justify granting Plaintiff's request for
11  review because neither of these opinions demonstrated that the ALJ's
12  decision was "contrary to the weight of the evidence currently of
13  record."  20 C.F.R. § 404.970(b).  In other words, the additional
14  evidence Plaintiff submitted to the Appeals Council does not alter this
15  Court's conclusion that the ALJ's decision is supported by substantial
16  evidence in the record.  <u>Batson</u>, 359 F.3d at 1193.

17      Therefore, the Court recommends that Plaintiff's motion for summary
18  judgment on this basis be **DENIED.**

19      **2.   <u>Plaintiff's Lower Back Problem</u>**

20      Plaintiff also contends that his medical records dating back to
21  March 2, 1973, support his claim that he has an ongoing lower back
22  problem.  Pl.'s Opp'n at 7-8.  In 1973, Dr. Dana Maciunas wrote a letter
23  on Plaintiff's behalf which stated "[i]t is most important that Daniel
24  Hernandez obtain a new extra firm mattress (because this partially
25  relieves his back pain which is due to Scheuermann's disease)."  AR at
26  206.  To demonstrate the continuing nature of this problem, Plaintiff
27  points to a diagnostic imaging procedure performed on January 15, 2004,
28  which showed disc bulging and narrowing of the nerve root outlet at L4

1  and L5.  Pl.'s Opp'n at 7-8.  The latter records were before the ALJ but
2  Plaintiff did not submit Dr. Maciunas' letter until he appealed the
3  ALJ's decision.

4      Once again, Plaintiff fails to demonstrate that the ALJ's
5  conclusion is not supported by substantial evidence.  Plaintiff appears
6  to suggest that the ALJ improperly rejected the opinions of his treating
7  physicians.  It is true that an ALJ must afford greater weight to the
8  opinions of treating physicians and may not reject those opinions
9  without providing specific and legitimate reasons for doing so (if the
10 treating physician's opinion is uncontroverted, the ALJ's reasons must
11 be clear and convincing).  Smolen v. Chater, 80 F.3d 1273, 1285 (9th
12 Cir. 1996).  But here, the ALJ did not reject Plaintiff's treating
13 physicians' opinions.  See AR at 25-27.  To the contrary, the ALJ
14 explicitly cited the January 2004 diagnostic imaging results in his
15 decision but noted that progress notes thereafter reflected no
16 significant clinical changes in the claimant's overall presentation.  AR
17 at 24.  This conclusion is supported by substantial evidence in the
18 record.  Dr. Luetzow, one of Plaintiff's treating physicians, ordered
19 the January 15, 2004 diagnostic imagining.  AR at 181.  Just over four
20 months later, Dr. Luetzow opined that Plaintiff suffered from
21 osteoarthritis, bilateral plantar fasciitis, and left knee pain and
22 concluded that these conditions resulted in permanent restrictions, but
23 did not even mention back pain and did not conclude that Plaintiff was
24 permanently disabled.  AR at 175.

25     Similarly, the ALJ acknowledged without dispute the findings of
26 another of Plaintiff's treating physicians, Dr. Tsung.  AR at 24.  Dr.
27 Tsung believed that Plaintiff's back pain was "secondary to his
28 heel/foot pain causing improper body mechanics while ambulating."  AR at

192. Dr. Tsung never opined that Plaintiff was permanently disabled. In fact, the letter that Dr. Tsung provided over a year later, which Plaintiff first submitted on appeal, reconfirms her prior opinion and notes that "[s]ubsequent examination today reveals no definite nerve type symptoms explaining his lower back pain." AR at 204. Thus, Plaintiff has offered no medical evidence that his back problems rendered him permanently disabled or that the ALJ improperly rejected any of his treating physicians' findings regarding his back pain.[11]

In sum, the Court finds that the ALJ properly considered the evidence and opinions provided by Plaintiff's treating physicians regarding Plaintiff's back pain and that the ALJ's decision is supported by substantial evidence in the record. <u>Batson</u>, 359 F.3d at 1193. Nothing in the record or Plaintiff's briefing before this Court suggests that Plaintiff experiences disabling back pain while sitting or that his back condition otherwise prevents him from engaging in sedentary work. Accordingly, the Court recommends that Plaintiff's motion for summary judgment on this basis be **DENIED.**

///

///

---

[11]   For the same reason, the Court rejects Plaintiff's apparent argument that the Appeals Council should have granted review based on Dr. Maciunas' 1973 letter. The Appeals Council will only grant review of the case if it finds "that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b). Dr. Maciunas' statement that Plaintiff suffers from back pain and that this pain is partially relieved by an extra firm mattress does not contradict the evidence relied on by the ALJ. In fact, Dr. Maciunas' statement supports the ALJ's conclusion that while Plaintiff suffers from back pain, it is alleviated by conservative care (e.g. a firm mattress) and, therefore, is not disabling. <u>See</u> AR at 23-27.

### 3. <u>New Medical Evidence</u>

As a final basis for relief, Plaintiff submits recent medical records to demonstrate that his medical problems have in fact worsened since the ALJ rendered his decision on October 28, 2004, and the Appeals Council declined review on June 29, 2005. However, these records are not relevant to the determination of the instant motions because these records were not before the ALJ or the Appeals Council. New evidence may provide a basis for remanding the case for further review by the ALJ, but only if the plaintiff shows that (1) the new evidence is material and (2) there is good cause for the failure to incorporate the new evidence into the record in a prior proceeding. 42 U.S.C.A. § 405(g) (2006). To demonstrate materiality, Plaintiff must show that the new evidence bears "directly and substantially on the matter in dispute" and that there is a "reasonable possibility" that the new evidence would have changed the ALJ's decision. <u>Mayes v. Massanari</u>, 276 F.3d 453, 462 (9th Cir. 2001) (internal citations omitted).

Plaintiff has not specifically argued that the evidence is material or that good cause exists. Nor does it appear that he could succeed on either front. The Ninth Circuit has held that if the new evidence merely shows that the claimant's condition deteriorated after the administrative hearing, then it is not material to the claimant's condition during the time at issue. <u>Sanchez v. Sec'y of Health and Human Serv.</u>, 812 F.2d 509, 512 (9th Cir. 1987). That is precisely the claim that Plaintiff makes in this case and the medical opinions he presents from February and March of 2006 only attest to his disability status as of those dates, not before. Pl.'s SJ Mot. at 2-5 (and attached exhibits).

///

1    Moreover, even assuming Plaintiff met the materiality requirement,
2  Plaintiff has not shown good cause for not having offered the evidence
3  earlier.  "A claimant does not meet the good cause requirement by merely
4  obtaining a more favorable report once his or her claim has been
5  denied."  Mayes, 276 F.3d at 463.  "To demonstrate good cause, the
6  claimant must demonstrate that the new evidence was unavailable
7  earlier."  Id.  Plaintiff makes no such allegation.  His new evidence
8  consists almost exclusively of more favorable reports from the same
9  physicians without any showing that new medical findings support these
10  altered disability conclusions.  This does not justify review under
11  Mayes.  Accordingly, while the new evidence may form the basis for a new
12  application for benefits, it cannot and does not form the basis for a
13  remand.

14                            **CONCLUSION**

15    For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the
16  Court issue an Order: (1) approving and adopting this Report and
17  Recommendation; (2)denying Plaintiff's motion for summary judgment; (3)
18  granting Defendant's cross-motion for summary judgment, and (4) denying
19  Defendant's motion to dismiss as moot.

20    **IT IS ORDERED** that no later than **June 15, 2007**, any party to this
21  action may file written objections with the Court and serve a copy on
22  all parties.  The document should be captioned "Objections to Report and
23  Recommendation."
24  ///
25  ///
26  ///
27  ///
28  ///

1     **IT IS FURTHER ORDERED** that any reply to the objections shall be

2 filed with the Court and served on all parties no later than **July 6,**

3 **2007**.  The parties are advised that failure to file objections within

4 the specified time may waive the right to raise those objections on

5 appeal of the Court's order.  <u>See</u> <u>Turner v. Duncan</u>, 158 F.3d 449, 455

6 (9th Cir. 1998).

7 DATED:  May 24, 2007

8

9                     BARBARA L. MAJOR
                    United States Magistrate Judge

10

11

12 COPY TO:

13 HONORABLE WILLIAM Q. HAYES
U.S. DISTRICT JUDGE

14

15 ALL COUNSEL

16

17

18

19

20

21

22

23

24

25

26

27

28